# In the United States Court of Federal Claims

No. 18-1494C

Filed Under Seal: January 22, 2019

Reissued For Publication: February 25, 2019[*]

NOT FOR PUBLICATION

| | | |
|---|---|---|
| SYSTEM STUDIES & SIMULATION, INC. | ) ) ) | Post-Award Bid Protest; Motion For Judgment Upon the Administrative Record; RCFC 52.1; Injunctive Relief; RCFC 65. |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| v. | ) ) | |
| TORCH TECHNOLOGIES, INC., | ) ) | |
| Defendant-Intervenor. | ) ) | |

*W. Brad English*, Attorney of Record, *Jon D. Levin*, Of Counsel, *J. Andrew Watson, III*, Of Counsel, Maynard, Cooper & Gayle, P.C., Huntsville, AL, for plaintiff.

*Albert S. Iarossi*, Trial Attorney, *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Major Ronald M. Herrmann*, Of Counsel, United States Army, for defendant.

*Roderic G. Steakley*, Counsel of Record, *Benjamin R. Little*, Of Counsel, Sirote & Permutt, P.C., Huntsville, AL, for defendant-intervenor.

---

[*] This Memorandum Opinion and Order was originally filed under seal on January 22, 2019 (docket entry no. 29). The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order. The parties filed a joint status report on February 21, 2019 (docket entry no. 31) proposing certain redactions which the Court has adopted. And so, the Court is reissuing its Memorandum Opinion and Order, dated January 22, 2019, with the agreed-upon redactions indicated by three consecutive asterisks within brackets ([***]).

**MEMORANDUM OPINION AND ORDER**

GRIGGSBY, Judge

**I.    INTRODUCTION**

In this post-award bid protest matter, System Studies & Simulation, Inc. ("S3") challenges the United States Army Contracting Command—Redstone's (the "Army") evaluation of responsive quotations for a task order to provide technical research and development activities and support for projects and systems (the "Task Order") supported by the Engineering Directorate for the Aviation and Missile Research, Development, and Engineering Center ("AMRDEC"). *See generally* Compl. S3 also challenges the Army's decision to award the Task Order to Torch Technologies, Inc. ("Torch"). *Id.*

S3 has moved for a preliminary injunction, pursuant to Rule 65 of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Mot. for Prelim. Inj. In addition, the parties have filed cross-motions for judgment upon the administrative record, pursuant to RCFC 52.1. *See generally* Pl. Mot.; Def. Mot.; Def.-Int. Mot. For the reasons discussed below, the Court: (1) **DENIES** S3's motion for judgment upon the administrative record; (2) **GRANTS** the government's and Torch's cross-motions for judgment upon the administrative record; (3) **DENIES** S3's motion for a preliminary injunction; and (4) **DISMISSES** the complaint.

**II.    FACTUAL AND PROCEDURAL BACKGROUND[1]**

**A.    Factual Background**

**1.    The Task Order Request For Quotations**

On June 12, 2018, the Army issued task order request for quotation TORFQ 2018T-1, entitled "Life Engineering Support" (the "TORFQ"). AR Tab 25 at 967. The objective of the Task Order being solicited was "to provide the full range of technical research and development activities and support including engineering, fielding, sustainment, and all associated subject matter expertise for projects and systems supported by the AMRDEC . . . ." AR Tab 21 at 915.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from S3's complaint ("Compl."); the administrative record ("AR"); S3's motion for judgment upon the administrative record ("Pl. Mot."); and the government's cross-motion for judgment upon the administrative record ("Def. Mot."). Except where otherwise noted, all facts recited herein are undisputed.

The TORFQ provides that the support activities for the Task Order include the "research, design, development, production, acquisition, test, delivery, sustainment, modification, upgrade, and reclamation of supported aviation missile, ground, sea, and soldier systems, and all associated development, production, and sustainment support equipment." *Id.*

Pursuant to the TORFQ, award of the Task Order would be made to the quoter "whose quotation provide[d] the best value to the Government," based upon an evaluation that used specified evaluation criteria and a trade-off process. AR Tab 18 at 905. Specifically, the TORFQ provides that quotations were to be evaluated based upon three criteria: (1) Technical Expertise; (2) Risk Mitigation and Management; and (3) Price. *Id.* at 905-909.

The TORFQ also provides that the non-price evaluation factors were of equal importance, and that these two factors were of greater importance than price. *Id.* at 905. In addition, the TORFQ provides that, while price was not expected to be the controlling criterion in the selection, "its importance will increase as the differences between the evaluation results for the other criteria decrease." *Id.* Lastly, the TORFQ provides that each quoter was required to "demonstrate in its own words a thoughtful and convincing approach to address **how** the Offeror intends to perform the specific requirements stated in this TORFQ." *Id.* (emphasis in original).

Pursuant to the terms of the TORFQ, quotations would be rated as either "Outstanding," "Good," "Acceptable," or "Unacceptable" under the Technical Expertise Factor and the Risk Mitigation and Management Factor. *Id.* at 906-908. Specifically relevant to this dispute, the TORFQ provides that, to receive a rating of "Outstanding" under the Technical Expertise Factor, the Army must find that:

> [The] Quotation meets requirements and indicates an exceptional level of expertise and an understanding of the requirements. Strengths far outweigh any weaknesses. Risk of unsuccessful performance is very low.

*Id*. at 906. The TORFQ also provides that, to receive a rating of "Good" under the Technical Expertise Factor, the Army must find that:

> [The] Quotation meets requirements and indicates a thorough level of expertise and an understanding of the requirements. Strengths outweigh any weaknesses. Risk of unsuccessful performance is low.

*Id*.

In addition, the TORFQ provides that, to receive a rating of "Good" under the Risk Mitigation and Management Factor, the Army must find that:

> [The] Quotation meets requirements and indicates a thorough Risk Mitigation and Management approach. Strengths outweigh any weaknesses. Risk of unsuccessful performance is low.

*Id.* at 907. Lastly, the TORFQ provides that, to receive a rating of "Acceptable" under the Risk Mitigation and Management Factor, the Army must find that:

> [The] Quotation meets requirements and indicates an adequate Risk Mitigation and Management approach. Strengths and weaknesses are offsetting or will have little or no impact on contract performance. Risk of unsuccessful performance is moderate.

*Id.* at 908.

### 2.   The Army's Evaluation Of Quotations

In response to the TORFQ, the Army received and evaluated quotations submitted by Torch, S3, and another quoter—Intuitive Research and Technology Corporation. AR Tab 55 at 2058.

During the evaluation of Torch's quotation under the Technical Expertise Factor, the Army assigned Torch's quotation six strengths and one weakness, which resulted in a rating of "Good" under that factor. AR Tab 54 at 2037-38. During the evaluation of Torch's quotation under the Risk Mitigation and Management Factor, the Army did not assign any strengths or weaknesses to Torch's quotation, which resulted in a rating of "Acceptable" under that factor. *Id.* at 2040-41.

During the evaluation of S3's quotation under the Technical Expertise Factor, the Army assigned six strengths and two weaknesses to S3's quotation, which resulted in a final rating of "Good" under that factor. AR Tab 53 at 2030-32. One of the weaknesses that the Army assigned under the Technical Expertise Factor related to the requirements under section 3.6.4 of the performance work statement ("PWS") for the TORFQ, which requires that quoters "develop and facilitate logistics engineering workshops." AR Tab 21 at 923; AR Tab 53 at 2032. The Army stated that it assigned this weakness because it was "unclear whether [S3] understands the PWS requirement for the workshops to 'assist with the development of a research capability

4

within AMRDEC to investigate, develop and test new logistics technologies and methodologies.'" AR Tab 53 at 2032.

The Army also included three comments in its evaluation of S3's quotation under the Technical Expertise Factor. *Id.* at 2032. In two of these comments, the Army commented that it was unclear whether S3 would provide the specified technical or subject matter expertise called for under the TORFQ. *Id*. ("[H]owever the Offeror does not explicitly state that they will provide this technical expertise to the Government as part of this effort. . . . The Offeror's choice of wording in response to this section does not make it clear or plainly state that they will provide subject matter expertise.").

During the evaluation of S3's quotation under the Risk Mitigation and Management Factor, the Army rated S3's quotation as "Acceptable," after declining to assign any strengths or weaknesses to the quotation. *Id.* at 2034-35. In the explanation for this rating, the Army stated, among other things, that "[S3's] management approach mitigates risk[s] through use of a [***]." *Id*. at 2034.

As a result of the Army's evaluation process, the quotations submitted by S3 and Torch received the same rating of "Good" under the Technical Expertise Factor and the same rating of "Acceptable" under the Risk Mitigation and Management Factor. *See generally* AR Tabs 53 and 54.

### 3. The Army's Best Value Determination

After completing the evaluation of responsive quotations, the Army conducted a best value and trade-off analysis to determine which quotation provided the overall best value to the government. *See generally* AR Tab 55. During this analysis, the Army found that the quotations submitted by S3 and Torch offered similar value to the government, because the two quotations received identical ratings under the TORFQ's non-price evaluation factors—with Torch presenting a small edge with respect to the Technical Expertise Factor. *Id.* at 2060. In this regard, the Army found that the two weaknesses assigned to S3's quotation under the Technical Expertise Factor were not "considered significant." *Id*.

In addition, the Army found that, "[c]onsidering the relatively similar technical evaluation results attributed to Torch and S3, in accordance with the Evaluation Criteria [under

5

the TORFQ], price becomes an important discriminator." *Id.*  Given this, the Army concluded that "[w]ith a small advantage in the non-price factors, and an additional advantage in the price factor . . . Torch represents the best value to the government." *Id.*  And so, the Army awarded the Task Order to Torch on September 7, 2018.  *See generally* AR Tab 61.

### B. Procedural History

S3 commenced this post-award bid protest action on September 27, 2018.  *See generally* Compl.  On September 27, 2018, S3 filed a motion for a preliminary injunction and a memorandum of points and authorities in support of its motion for a preliminary injunction.  *See generally* Mot. for Prelim. Inj.; Pl. Mem.

On October 1, 2018, Torch filed an unopposed motion to intervene in this matter.  *See generally* Mot. to Intervene.  On October 2, 2018, the Court held an initial telephonic status conference, during which S3 agreed to hold its motion for a preliminary injunction in abeyance pending the resolution of the merits of this case.  Scheduling Order at 1, dated Oct. 2, 2018.  On October 2, 2018, the Court issued an Order granting Torch's motion to intervene and setting the briefing schedule for the parties' cross-motions for judgment upon the administrative record.  *See generally id.*  On October 2, 2018, the Court entered a Protective Order in this matter.  *See generally* Protective Order.

On October 12, 2018, the government filed the administrative record.  *See generally* AR.  On October 29, 2018, S3 filed a motion for judgment upon the administrative record.  *See generally* Pl. Mot.  On November 13, 2018, the government filed a cross-motion for judgment upon the administrative record and a response and opposition to S3's motion for judgment upon the administrative record.  *See generally* Def. Mot.  On November 13, 2018, Torch filed a cross-motion for judgment upon the administrative record and a response and opposition to S3's motion for judgment upon the administrative record.  *See generally* Def.-Int. Mot.

On November 19, 2018, S3 filed a response and opposition to the government's and Torch's respective cross-motions for judgment upon the administrative record and a reply in support of its motion for judgment upon the administrative record.  *See generally* Pl. Resp.  On November 27, 2018, the government filed a reply in support of its cross-motion for judgment upon the administrative record.  *See generally* Def. Reply.  On November 27, 2018, Torch filed a reply in support of its cross-motion for judgment upon the administrative record.  *See generally*

Def.-Int. Reply. On January 11, 2019, the Court held oral argument on the parties' cross-motions. *See generally* Oral Arg. Tr.

These matters having been fully briefed, the Court resolves the pending motions.

## III.   LEGAL STANDARDS

### A.   Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). This Court reviews agency actions in bid protest matters under the Administrative Procedure Act's "arbitrary and capricious" standard. *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act). And so, under this standard, an award may be set aside if "'(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). In this regard, the United States Court of Appeals for the Federal Circuit has explained that:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis. When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id*. at 1351 (internal citations omitted).

In reviewing an agency's procurement decision, the Court also recognizes that the agency's decision is entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (citations omitted). In addition, the Court should not substitute its judgment for that of the agency. *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997). And so, "'[t]he protestor must show by a preponderance of the evidence that the agency's actions

7

were either without a reasonable basis or in violation of applicable procurement law.'" *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 648 (2003) (quoting *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003)).

This standard "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . . ." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citation omitted). But, if "the agency entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency," then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

  **B.**  **Best Value Determinations**

This Court affords contracting officers a great deal of discretion in making contract award decisions, particularly when the contract is to be awarded to the offeror that will provide the best value to the government. *See TRW, Inc. v. Unisys Corp.*, 98 F.3d 1325, 1327-28 (Fed. Cir. 1996); *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996); *Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d 955, 958-59 (Fed. Cir. 1993); *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1355-56 (Fed. Cir. 2004). The Court has held that the government's best value determination should not be disturbed, if the government documents its analysis and includes a rationale for any business judgments and trade-offs made in reaching that decision. *See Blackwater Lodge & Training Center, Inc. v. United States*, 86 Fed. Cl. 488, 514 (2009). And so, a decision to award a contract is least vulnerable to challenge when that decision is based upon a best value determination. *PlanetSpace, Inc. v. United Sates*, 96 Fed. Cl. 119, 125 (2010).

  **C.**  **Judgment Upon The Administrative Record**

Generally, RCFC 52.1 limits this Court's review of an agency's procurement decision to the administrative record. RCFC 52.1; *see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("[T]he focal point for judicial review should be the administrative

8

record already in existence."). And so, unlike a summary judgment motion brought pursuant to RCFC 56, "the existence of genuine issues of material fact does not preclude judgment on the administrative record" under RCFC 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011) (citations omitted); RCFC 56. Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

### D.  Injunctive Relief

Under its bid protest jurisdiction, the Court "may award any relief [it] considers proper, including declaratory and injunctive relief . . . ." 28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). In deciding whether to issue a permanent injunction, the Court "considers: (1) whether . . . the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); *see also Centech Grp., Inc.*, 554 F.3d at 1037. In this regard, the United States Court of Appeals for the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive. If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted).

A plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for injunctive relief. *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief). This Court has also found success upon the merits to be "the most important factor for a court to consider when

deciding whether to issue injunctive relief." *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)). But, while success upon the merits is necessary, it is not sufficient alone for a plaintiff to establish that it is entitled to injunctive relief. *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) (("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citations omitted)).

## IV.   LEGAL ANALYSIS

In this post-award bid protest matter, S3 challenges the Army's evaluation of its quotation upon two grounds. First, S3 argues that the Army misevaluated its quotation under the Technical Expertise Factor, because the Army assigned a weakness to S3's quotation and made negative comments about the quotation. Pl. Mot. at 10-13. Second, S3 argues that the Army misevaluated its quotation under the TORFQ's Risk Mitigation and Management Factor, because the Army failed to assign S3 a strength for its proposed use of a [***]. *Id.* at 13-14. And so, S3 contends that it has been prejudiced by these alleged evaluation errors and it seeks to set aside the Army's decision to award the Task Order to Torch. *Id.* at 14-15.

For the reasons set forth below, S3's claims are not substantiated by the administrative record. And so, the Court: (1) **DENIES** S3's motion for judgment upon the administrative record; (2) **GRANTS** the government's and Torch's cross-motions for judgment upon the administrative record; (3) **DENIES** S3's motion for a preliminary injunction; and (4) **DISMISSES** the complaint.

### A.   S3 Has Not Shown Prejudice

As a preliminary matter, the government persuasively argues that S3 has not shown that it has been prejudiced by the evaluation errors alleged in this matter, because the administrative record shows that S3's evaluation ratings would not have changed if the Army did not make these alleged evaluation errors. It is well-established that to prevail in this bid protest dispute, S3 must show a significant, prejudicial error in the procurement process. *See Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed. Cir. 1996). And so, to prevail here, S3 must show that there was a substantial chance that it would have been awarded the Task Order, but for the Army's alleged evaluation errors. *Id.* S3 makes no such showing in this case.

First, the administrative record shows that the Army's rating of S3's quotation under the Technical Expertise Factor would have remained as "Good," if Army had not assigned the weakness that S3 challenges in this bid protest dispute. In this regard, it is undisputed that S3 and Torch received identical ratings of "Good" under the Technical Expertise Factor during the evaluation process for the TORFQ. AR Tab 55 at 2059. The administrative record also shows that the Army rated S3's quotation as "Good" under the Technical Expertise Factor after assigning two weaknesses and six strengths to S3's quotation. *Id.* at 2049-51. In addition, the record evidence shows that the Army rated Torch's quotation as "Good" under this evaluation factor after assigning one weakness and six strengths to Torch's quotation. *Id.* at 2052-53.

While S3 challenges the Army's decision to assign one of the two weaknesses assigned to its quotation under the Technical Expertise Factor, the administrative record shows that the Army would have still rated S3's quotation as "Good" even if it had not assigned the contested weakness. *See* AR Tab 55 at 2049-54 (providing identical ratings of "Good" for S3 and Torch). In fact, the elimination of this one weakness would have resulted in S3 and Torch receiving an identical number of strengths and weaknesses under the Technical Expertise Factor. AR Tab 53 at 2030-33; AR Tab 54 at 2037-39. Given this, the administrative record shows that the Army's rating of S3's quotation under the Technical Expertise Factor would have remained as "Good," had the Army not assigned the weakness that S3 challenges in this dispute.

S3 similarly fails to explain how it's rating under the Risk Mitigation and Management Factor would have improved if the Army had assigned its quotation a strength under that evaluation factor. In its motion for judgment upon the administrative record, S3 argues that the Army should have assigned a strength to its quotation under the Risk Mitigation and Management Factor for S3's proposal [***]. Pl. Mot. at 13. But, even if true, S3 fails to explain how assigning this strength would have improved its rating under the Risk Mitigation and Management Factor.

In this regard, the TORFQ provides that a "Good" rating under the Risk Mitigation and Management Factor requires, among other things, that S3's quotation indicate "a thorough Risk Mitigation and Management approach" and that the "[r]isk of unsuccessful performance is low."[2]

---

[2] During oral argument, the government argued that the TORFQ's requirement that a quotation's strengths outweigh any weaknesses to receive a "Good" rating requires that that the Army weigh each

AR Tab 18 at 907. But, S3 points to no evidence in the administrative record to show how its quotation would have met these evaluation criteria. Pl. Mot. at 13-14; Pl. Resp. at 2-4.

S3 also points to no evidence in the administrative record to show that it would have had a substantial chance of being awarded the Task Order at issue under circumstances where its quotation received the same evaluation ratings as Torch's quotation under the TORFQ's non-price evaluation factors. Notably, the TORFQ provides, with regards to the Army's trade-off analysis, that the "importance [of price] will increase as the differences between the evaluation results for the other criteria decrease." AR Tab 18 at 905. The administrative record makes clear that S3's proposed price exceeded Torch's proposed price by approximately [***]. AR Tab 55 at 2059. And so, S3 simply has not shown that it would have had a substantial chance of being awarded the Task Order, but for the evaluation errors alleged in this dispute. *See Statistica, Inc.*, 102 F.3d at 1581.

### B. S3's Claims Are Not Substantiated

Notwithstanding the aforementioned concerns regarding whether S3 has demonstrated prejudice in this case, the administrative record also makes clear that S3's challenges to the Army's evaluation process are unsubstantiated for several reasons.

#### 1. S3's Claim That The Army Misevaluated It's Quotation Under The Technical Expertise Factor Is Unsubstantiated

First, S3's challenge to the Army's decision to assign a weakness to its quotation under the Technical Expertise Factor with regards to compliance with PWS section 3.6.4 is unsubstantiated by the record evidence. Pl. Mot. at 10-11. The administrative record shows that the Army assigned this weakness because:

> PWS section 3.6.4 requires contractor support for logistics engineering workshops, with specified purposes or objectives for the workshops. [S3's] proposal states that the Offeror will provide "input and recommendations on . . . workshop topics including new technologies and methodologies." However, it is unclear whether the Offeror understands the PWS requirement for the workshop to "assist with the

---

strength and weakness to determine the evaluation rating rather than simply count the number of strengths and weaknesses assigned. Oral Arg. Tr. at 30:21-33:16; *see also* AR Tab 18 at 907 ("Strengths outweigh any weaknesses.").

>development of a research capability within AMRDEC to investigate, develop and test new logistics technologies and methodologies."

AR Tab 53 at 2032. And so, the Army determined that the uncertainty regarding S3's understanding of all of the PWS's requirements added risk to S3's successful contract performance. *Id.* at 2032.

While S3 understandably disagrees with the Army's decision to assign this weakness, the Army's decision to do so does not lack a rational basis. *See id.* at 2032-33. The administrative record makes clear that the Army's concern with regards to S3's quotation was based upon a specific requirement in the PWS that mandated that the workshops to be provided assist the Army with the development of a research capability regarding new logistics technologies and methodologies. *Id.* at 2032. While S3's quotation states that S3 would provide "input and recommendations" on "potential logistics engineering and sustainment activity workshop topics," the Army concluded that S3's quotation did not demonstrate a full understanding of the PWS's requirements with respect to these workshops. AR Tab 34 at 1143; AR Tab 53 at 2032. Given the evidence in the administrative record explaining the Army's concerns—and the requirements of PWS section 3.6.4—S3 has not shown that the Army's decision to assign this weakness lacked a rational basis. AR Tab 21 at 923; AR Tab 53 at 2032.[3]

S3's argument that the Army misevaluated its quotation under the Technical Expertise Factor because the agency assigned "two vaguely negative comments" to its quotation is similarly unsubstantiated. Compl. at ¶ 27; Pl. Mot. at 11-13. In its motion for judgment upon the administrative record, S3 argues that the Army erred by commenting that S3 did not explicitly state in its quotation that S3 would provide certain technical expertise and subject-matter expertise required under the TORFQ. Pl. Mot. at 11-12; *see generally* AR Tab 53 at 2032; AR Tab 55 at 2051. But, the government correctly argues in its cross-motion that these comments did not significantly influence the Army's rating of S3's quotation under the Technical Expertise Factor. Def. Mot. at 12-13. In fact, the administrative record shows that the

---

[3] The administrative record also makes clear that the Army did not consider this weakness to be significant in rating S3's quotation under the Technical Expertise Factor. AR Tab 55 at 2060 ("S3 presented two weaknesses in Technical Expertise, neither of which [was] considered significant.").

Army did not address these comments in the agency's explanation of rating for S3's quotation. AR Tab 53 at 2032-33.

The government also persuasively argues that the comments in dispute were justified, because the TORFQ requires that S3 demonstrate "a thoughtful and convincing approach" to how it would perform the requirements specified in the TORFQ. Def. Mot. at 12-13 (quoting AR Tab 18 at 905). And so, S3 has not shown that the Army's comments were improper, or that these comments impacted the rating of S3's quotation under the Technical Expertise Factor.

### 2. S3's Challenge To The Army's Evaluation Of The Risk Mitigation And Management Factor Is Also Unsubstantiated

S3's claim that the Army misevaluated its quotation under the TORFQ's Risk Mitigation and Management Factor also lacks support in the record evidence. Pl. Mot. at 13-14. As discussed above, S3 argues that the Army erred by failing to assign a strength to its quotation under this evaluation factor because S3 proposed the use of [***]. *Id.* at 13. While the record evidence shows that the Army assigned a strength to S3's quotation under the Technical Expertise Factor for proposing the use of [***], S3's argument that the Army irrationally declined to also assign a strength to its quotation for this proposal under the Risk Mitigation and Management Factor is misguided. *Id.*; *see* AR Tab 55 at 2049.

Indeed, as S3 acknowledges, the fact that the Army assigned a strength to S3's quotation based upon this proposal under the Technical Expertise Factor does not mandate that the Army also assign a strength to S3's quotation under the Risk Mitigation and Management Factor. Pl. Resp. at 3.[4] In addition, while S3 makes a persuasive argument that the Army *could* have assigned a strength to its quotation under the Risk Mitigation and Management Factor for proposing [***], S3 has not shown that the Army's decision not to do so was irrational. Oral. Arg. Tr. at 19:22-24:23.

In fact, S3 points to no evidence in the administrative record to show that the Army's contracting officer abused her discretion in declining to assign the strength that S3 seeks. *Id.*; Pl. Mot. at 13-14; Pl. Resp. at 2-4. Rather, the record evidence shows that the contracting officer

---

[4] During oral argument, the parties agreed that the Army appropriately considered S3's proposal to use [***] in evaluating S3's quotation under the Risk Mitigation and Management Factor. Oral Arg. Tr. at 20:19-21:6; 34:14-35:3.

14

reasonably determined that S3's quotation did not warrant the assignment of any strengths under the Risk Mitigation and Management Factor based upon the evaluation criteria set forth in the TORFQ. AR Tab 53 at 2034-35. And so, the Court will not substitute its judgement for that of the agency's with respect to the evaluation of S3's proposal. *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997) (holding that the Court should not substitute its judgment for that of the agency in bid protest matters).[5]

### C.  S3 Is Not Entitled To Injunctive Relief

As a final matter, S3 has not shown that it is entitled to the injunctive relief that it seeks in this matter. S3 requests, among other things, that the Court enjoin the Army from proceeding with performance under the Task Order and direct the Army to re-evaluate quotations. *See generally* Compl. at Prayer for Relief; Mot. for Prelim. Inj. But, S3 has not demonstrated that it is entitled to such injunctive relief, because it has not succeeded upon the merits of any of its claims. *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005). And so, the Court must **DENY** S3's requests for injunctive relief.

### V. CONCLUSION

In sum, S3 has not shown that it has been prejudiced by the Army's evaluation process, or that the administrative record supports any of its claims challenging the Army's evaluation of quotations in response to the TORFQ. And so, for the foregoing reasons, the Court:

1. **DENIES** S3's motion for judgment upon the administrative record;

2. **GRANTS** the government's and Torch's cross-motions for judgment upon the administrative record;

3. **DENIES** S3's motion for a preliminary injunction; and

4. **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

Each party to bear its own costs.

---

[5] As discussed above, S3 has not shown that the rating of its quotation under the Risk Mitigation and Management Factor would have improved from "Acceptable" to "Good," even if the Army erred by declining to assign a strength to S3's quotation under this factor.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on October 2, 2018. This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**. The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication. The parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for any proposed redactions on or before **February 22, 2019**.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge